IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JULIA ROBERTSON-ARMSTRONG    :     CIVIL ACTION
                      :
        v.           :
                      :
ROBINSON HELICOPTER CO., INC.  :
et al.                   :     NO. 13-2810

MEMORANDUM

Bartle, J.                               April 22, 2014

      Plaintiff Julia Robertson-Armstrong, a citizen of
Pennsylvania, originally filed this action on April 15, 2013 in
the Court of Common Pleas of Philadelphia County for serious
personal injuries arising out of the crash of a Robinson R-22
BETA helicopter on July 20, 2011 near Dayton, New Jersey.  She
has sued seven defendants.[1]  The action was removed to this court
on May 21, 2013 on the ground of diversity of citizenship and an
amount in controversy in excess of $75,000 exclusive of interest
and costs.  28 U.S.C. § 1332(a)(2).  Before the court is the
motion of plaintiff to remand this case to the Court of Common
Pleas of Philadelphia County.

I.

      Plaintiff maintains that complete diversity of
citizenship is lacking and the court has no subject matter

---

1.  The defendants named are:  Lycoming, Avco Corporation
("Avco"), Textron, Inc., Robinson Helicopter Company, Inc.,
Robinson Helicopter Company, Lycoming Engines and Operating
Division of AVCO Corporation, and Nassau Helicopters, Inc.

jurisdiction because Avco Corporation ("Avco"), in her view, is also a citizen of Pennsylvania.  See Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996).  Under 28 U.S.C. § 1332(c), a corporation is deemed a citizen of its state of incorporation as well as the state where it has its principal place of business.  While Avco's state of incorporation is Delaware, plaintiff asserts that its principal place of business is in Pennsylvania under the "nerve center" test enunciated by the Supreme Court in Hertz Corp. v. Friend, 559 U.S. 77 (2010); see also Johnson v. SmithKline Beecham Corp., 724 F.3d 337 (3d Cir. 2013).  This court allowed discovery on this issue.

        Based on discovery, Avco is a corporation whose sole shareholder is defendant Textron, Inc.  Textron, Inc. has various subsidiaries and affiliates, including Avco.  Avco is a holding company primarily in the business of manufacturing military vehicles, weapons, and electronic surveillance equipment for the United States Government as well as aircraft engines for commercial customers.  It has various subsidiaries, including Textron Systems Corporation.  Avco also has seven Operating Units, including Lycoming Engines Division ("Lycoming"), which plaintiff calls Lycoming.[2]  The manufacturing facility of Lycoming is located in Williamsport, Pennsylvania.

_____

2.  The other Operating Units are AAI Logistics & Technical Services Division, AAI Test and Training Division, AAI Unmanned Aircraft Systems Division, Textron Defense Systems, Textron Marine & Land Systems Division, and Textron Systems Advanced Systems Division.

In November 2012, Ellen Lord replaced Fred Strader as Avco's president and CEO.  In December 2012, at Lord's direction, Avco relocated its offices from Wilmington, Massachusetts to a building located at 40 Westminster Street, Providence, Rhode Island, which is owned by Textron Realty Corporation, where all of its directors and most of its top officers are located and its financial records are housed.[3]  Avco is listed on the building's directory and maintains its offices on the 16th floor.  At the time of the relocation Avco also filed papers with the Rhode Island Secretary of State to qualify the corporation to do business in that state.

On June 14, 2013, the annual meeting of the sole shareholder of Avco and the annual meeting of the board of directors of Avco were held at Avco's offices in Providence, Rhode Island.  At that time, the sole shareholder, Textron, Inc., elected Lord, Kim Herrington, and Danny Lee to serve as the board of directors of Avco.  All three are situated in Providence, Rhode Island.

The three members of the board of directors adopted a resolution at the June 14, 2013 meeting electing certain individuals as officers of Avco:  Lord as the president and CEO; Herrington as the senior vice president and chief financial

_____

3.  In a prior, unrelated action which raised the issue of Avco's citizenship, we held that Avco's principal place of business was in Wilmington, Massachusetts, where Avco's headquarters was located before its move to Rhode Island in December 2012.  Lewis v. Lycoming, Civil Action No. 11-6475, 2012 U.S. Dist. LEXIS 88905 (E.D. Pa. June 27, 2012).

officer; and Lee as the senior vice president, general counsel
and secretary.  Lord attended the meeting in person.

Eight of Avco's officers work from their primary
offices in Providence, Rhode Island, including:  Lord;
Herrington; Robert M. Powers, the senior vice president of human
resources; Daniel Hanlon, the vice president of human resources;
Stephen Greene, the vice president of communications; James C.
Cournoyer, the assistant treasurer; Brian D. Dwizcz, the
assistant treasurer; and Ann T. Willaman, the assistant
secretary.  While Lee has an office in Providence, Rhode Island,
he resides in Maryland.  Two of Avco's officers, Bhaskar
Ramachandran, vice president and chief executive officer, and
Debra A. Smilley-Weiner, assistant secretary, maintain their
primary offices in Hunt Valley, Maryland.  Only two officers,
Michael Kraft and David Dawes, assistant secretaries of Avco,
have their primary offices in Williamsport, Pennsylvania.

Textron, Inc., the sole shareholder of Avco, divides
its business into five segments, one of which is the Textron
Systems segment.[4]  The Textron Systems segment is not a legal
entity but merely provides a brand name used for various
products.  Lord, in addition to being the president and CEO of
Avco, is responsible for the Textron Systems segment of Textron,
Inc.

---

4.  The Textron Systems segment is different than Textron Systems
Corporation, which is a subsidiary of Avco.

In addition to electing officers at the June 14, 2013 meeting of the Avco board of directors, the board passed a resolution regarding the "Designation of Authorized Signatories for Lycoming Engines."  It authorized the president or any vice president of Avco together with the secretary or any assistant secretary of Avco to designate certain employees of Lycoming as:

> named "officers" or authorized signatories of the Lycoming Engines Division and who shall be authorized and empowered, severally or jointly depending upon the terms of the designation, and subject to all conditions thereby imposed and applicable Corporation policies and procedures, including, but not limited to, obtaining all necessary approvals and appropriate legal review, to sign, seal with the corporate seal, and execute and deliver in the name and on behalf of the Corporation with respect to the Lycoming Engines Division, contracts, agreements, purchase orders, bids, bonds, applications, reports, certificates, affidavits or other documents or instruments relative to or in connection with any work, property, purchase, contract, service or production of any kind which may be directly or indirectly carried on or performed by the Lycoming Engines Division of the Corporation....[5]

(emphasis added).

Lord, in her position as president and CEO of Avco, or members of her senior staff must approve business decisions for Avco and its businesses, including major decisions for Lycoming. Lord meets weekly, in person or by telephone, with the senior leadership from each of Avco's businesses, including Lycoming. She also reviews and approves monthly financial reports and strategic plans for each of Avco's businesses, including

---

5.  This resolution is part of the minutes of the annual meeting of the board of directors of Avco Corporation.

Lycoming, which are denominated President's Business Reviews ("PBR").  All agreements with distributors of Lycoming Engines are required to be reviewed and approved by Lord or other senior officers of Avco located in Providence, Rhode Island.

The general manager of each of Avco's operating units, including the general manager of Lycoming, submits a Strategic Business Review ("SBR") to Lord and Herrington each year.  The SBRs include an assessment of the relevant industry, competitors, and strategic objectives of each operating unit, including Lycoming, over a five-year horizon.  Lord prepares performance evaluations for some employees and makes recommendations with regard to advancement, salary, and bonus for these employees. Her duties include interviews of candidates for senior management positions with Avco's businesses and performance of marketing and sales activities on behalf of Avco.  She further approves certain contracts and performs other activities relating to the normal operation and management of Avco's businesses.

Further, under the "Textron Systems Operational Delegation of Authority Matrix" for Lycoming, Lord's approval is expressly required for all cooperative business arrangements, all capital expenditures, any business operations restructuring, any acquisition or divestiture of business, all engagements of consultants, all appointments of sales agents and representatives, all press releases and communications, all collective bargaining agreements, and all reductions in force. Lord conducts all of these activities in Rhode Island.

-6-

The managers of each of Avco's businesses, including Kraft, the senior vice president and general manager of Lycoming, report directly to Lord.  While Lord does not handle the day-to-day operations of Lycoming, she is responsible for leading the team.  Lord conducts by telephone and video conference a monthly operating meeting with Kraft and Dawes called the President's Business Line Review ("PBLR").  On a monthly basis, Kraft and Dawes prepare a PBLR report for Lord and Herrington, which provides them information on the current operational and financial performance of Lycoming.  Lord and Herrington annually review and approve a Long Range Plan ("LRP") submitted by the financial controller of each operating unit, including Lycoming. The LRPs are the financial components of the SBRs.

Kraft's preparation of the SBR is a detailed process requiring multiple meetings and telephone calls over a three to four month period, either in person or by video conference, with Lord and other Avco senior management in Providence, Rhode Island.  The SBR is presented orally to the senior management of Avco at the Avco headquarters in Providence.  In June 2013, Kraft presented in person to Lord in Providence the final draft of Lycoming's 2013 SBR.

Kraft and Dawes also prepare annually Lycoming's Annual Operating Plan ("AOP"), which delineates a one to two year financial outlook for the division.  Consistent with their reporting requirements, Kraft and Dawes present the AOP to Lord and Herrington by video conference for their review and approval.

-7-

This review occurs in Providence, Rhode Island.  In addition, Lord reviews and approves a Management Asset Plan ("MAP") each year for Lycoming, which covers personnel development and succession planning.

Lord undertakes performance evaluations for Kraft and other employees of Lycoming and makes recommendations with regard to advancement, salary and bonuses.  Herrington conducts the performance evaluation of Dawes.  Kraft is also subject to an informal mid-year performance evaluation which was conducted by Lord in August 2013.

Kraft makes recommendations to Lord as to aircraft engine design and manufacture.  Kraft communicates with Lord by phone, email, or text message concerning the business of Lycoming generally on a daily basis, depending on the issues affecting the business.  He also attends meetings on an ad hoc basis in Providence, Rhode Island with Lord and other senior officers of Avco.

Lord's express approval is required for the following actions with respect to each of Avco's operating divisions, including Lycoming:  (1) all cooperative business arrangements and teaming agreements; (2) all capital expenditures in excess of $500,000; (3) any business operations restructuring; (4) all business investments, new product investments and major expenditures; (5) all acquisitions and divestitures of businesses; (6) all engagements of consultants to do business with the United States government; (7) all press releases; (8)

all collective bargaining agreements; and (9) all reductions in force.

Since Textron's acquisition of Avco in 1985, no Avco board of directors meeting has been held in Pennsylvania. Lycoming employs 414 of Avco's approximately 3,754 employees. Finally, Lycoming accounted for approximately 11.5% of Avco's total revenues in 2012.

II.

Defendants, which have removed this action from the state court, are the parties that bear the burden of establishing that they have complied with all substantive and procedural removal requirements. Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987). The federal statutes regarding removal are construed strictly in favor of remand. Id. The district court must return the action to the state court if there is either a lack of subject matter jurisdiction or a defect in the removal process. PAS v. Travelers Ins. Co., 7 F.3d 349, 352 (3d Cir. 1993). Plaintiff argues, as noted above, that complete diversity of citizenship is lacking because one of the defendants, Avco, has the same Pennsylvania citizenship as the plaintiff.

The critical issue before us is whether Avco has met its burden of proof to establish that its principal place of business is in a state other than Pennsylvania. To answer this question, we must determine whether Avco has shown that its "nerve center," as defined by the Supreme Court in Hertz Corp. v.

-9-

Friend, 559 U.S. 77 (2010), is in Providence, Rhode Island rather
than in Williamsport, Pennsylvania.

In Hertz, the Supreme Court construed the meaning of a
corporation's "principal place of business" for purposes of
diversity jurisdiction under 28 U.S.C. § 1332(c).  It held:

> "principal place of business" is best read as
> referring to the place where a corporation's
> officers direct, control and coordinate the
> corporation's activities.  It is the place that
> Courts of Appeals have called the corporation's
> "nerve center."

559 U.S. at 92-93.  The Supreme Court explained that a
corporation's principal place of business is "the actual center
of direction, control, and coordination, i.e., the 'nerve center'
and not simply an office where it holds its board meetings (for
example, attended by directors and officers who have traveled
there for the occasion)."  Id.  Furthermore, "if the record
reveals attempts at manipulation-- for example, that the alleged
'nerve center' is nothing more than a mail drop box, a bare
office with a computer, or the location of an annual executive
retreat-- the courts should instead take as the 'nerve center'
the place of actual direction, control, and coordination, in the
absence of such manipulation."  Id. at 97.

The Court acknowledged that anomalies might arise under
the nerve center test.  For example, if the bulk of a company's
activities which are visible to the public take place in New
Jersey but the top officers run the business from New York, the
company's principal place of business, for diversity purposes, is

in New York.  Nonetheless, the Court reasoned that the nerve
center test had the advantage of being a "straightforward" rule,
designed to promote "administrative simplicity" and "greater
predictability," id. at 94, and to avoid "overly complex
jurisdictional administration."  Id. at 96.

Subsequent to the Hertz decision, our Court of Appeals,
in Johnson v. SmithKline Beecham Corp., 724 F.3d 337 (3d Cir.
2013), applied the nerve center test and concluded that the lower
court was correct in finding that none of the defendants was a
citizen of the same state as the plaintiffs.  In that case, the
plaintiffs, citizens of Pennsylvania, argued that two of the
defendants, GlaxoSmithKline LLC ("GSK LLC") and GSK Holdings, a
holding company incorporated in Delaware, were also citizens of
the Commonwealth.  GSK LLC was formed in 2009 when its
predecessor, SmithKline Beecham, was converted from a
Pennsylvania corporation into a Delaware limited liability
company.  GSK Holdings was the sole member of GSK LLC.  Johnson,
724 F.3d at 341.

While GSK Holdings' 650,000 square feet of office space
remained in Pennsylvania where it employed 1800 people, its board
of directors held its board meetings, which lasted 15 to 30
minutes, in Delaware, where one director attended in person and
two other directors participated by phone.  GSK Holdings'
presence in Delaware was limited, consisting of a ten-by-ten foot
office, which served primarily to house the corporation's books
and records.  Only one employee, a secretary, was based in

-11-

Delaware, and devoted just 20 hours a year to the company.
Moreover, GSK Holdings had authorized a number of people in
Philadelphia and London to sign documents on its behalf and enter
into certain routine transactions for the company.

The plaintiffs in Johnson, like the plaintiff here,
argued that under a "delegation theory" the court should consider
the activities of GSK LLC in determining the citizenship of GSK
Holdings because GSK Holdings "had the authority to manage GSK
LLC, but 'delegated' that power to GSK LLC managers."  As such,
because GSK LLC's managers were located in Philadelphia, the
plaintiffs maintained that GSK Holdings' nerve center was in
Pennsylvania.  Johnson, 724 F.3d at 349.  The plaintiffs in
Johnson further asserted that even if the court rejected the
"delegation" theory, it should still find that GSK Holdings'
nerve center was in Pennsylvania because its activities were
directed from Philadelphia.  Id.

Relying on Hertz, our Court of Appeals rejected both of
the plaintiffs' theories on the basis that "although a
corporation has citizenship, unincorporated entities do not,
regardless of their substantive similarities to corporations."
Johnson, 724 F.3d at 352; see also Bruesewitz v. Wyeth Corp., No.
05-5994, 2006 U.S. Dist. LEXIS 13206, at *9 (E.D. Pa. Mar. 27,
2006).  Thus, the court concluded, the center of direction and
control of GSK LLC's activities was irrelevant.  Rather, only the
nerve center of GSK Holdings was relevant to the issue of GSK
Holdings' citizenship.  Johnson, 724 F.3d at 352.  The court

emphasized, "Hertz reminds [the courts] that the 'nerve center'
test 'points courts in a single direction, towards the center of
overall direction, control and coordination." Johnson, 724 F.3d
at 356.  As such, the fact that "in this era of telecommuting,
some corporations may divide their command and coordinating
functions among officers who work at several different location,
perhaps communicating over the Internet," did not compel the
conclusion that the principal place of business was other than
Delaware.  The court explained, "the record supports the
conclusion that, although an array of support services were
provided from different locations, the board controlled the
company's core activities through decision-making at board
meetings located in Delaware.  In such an instance, Hertz
encourages rather than discourages our looking to the location of
the board meetings as the center of direction and control."

                            III.

        Plaintiff argues that we should consider Avco's
principal place of business to be in Williamsport, Pennsylvania
and not Providence, Rhode Island for several reasons.  First,
plaintiff asserts that Kraft, who is located in Pennsylvania,
actually directs Lycoming's operations.  Second, it contends that
Lycoming's operations are the sole purpose of Avco.  Third, it
submits that Lycoming receives its policies and procedures from
Textron Systems Corporation, not Avco; and finally that Lycoming
has been granted Organization Delegation Authorization ("ODA") by

                            -13-

the Federal Aviation Administration ("FAA") in Williamsport,
Pennsylvania, not Rhode Island.

We acknowledge that the public persona of Avco, to the
extent it exists, is in Williamsport, Pennsylvania where Lycoming
is located.  It is there that it manufactures airplane engines
and nowhere else.  Two Avco officers are on the scene who oversee
the operations at the site.  In contrast, Avco's visibility to
the public in Rhode Island is minimal.

Although Avco's public face may be in Pennsylvania, the
Supreme Court has made it clear in Hertz that that is not what
the "nerve center" test is all about.  The record reflects that
the top officers of Avco are situated in Providence, Rhode
Island.  All major decisions involving the business are made or
approved there.  From her office in Rhode Island Lord reviews and
approves Lycoming's monthly financial reports and strategic
plans, reviews and approves Lycoming's annual strategic
assessments and objectives, and reviews and approves Lycoming's
annual personnel plans.  Lord prepares performance evaluations
for high level employees of Lycoming, and interviews candidates
for senior management positions at Lycoming.  Her approval is
expressly required for all cooperative business arrangements, all
capital expenditures, any business operations restructuring, any
acquisition or divestiture of business, all engagements of
consultants, all appointments of sales agents and
representatives, all press releases and communications, all
collective bargaining agreements, and all reductions in force.

With regard to plaintiff's argument that Avco is a citizen of Pennsylvania because it was granted ODA by the FAA in Pennsylvania, it, too, is without merit.  The ODA directory, published by the FAA, indeed lists Lycoming as located in Pennsylvania.  Nonetheless, the citizenship of Lycoming is that of Avco for jurisdictional purposes.  Lycoming, as a subdivision of Avco, has no independent citizenship.  Moreover, we must look to the center of direction and control of Avco, not Lycoming, to determine the citizenship of Avco, even where here, as in Johnson, the public face of a company is that of a subsidiary and not of the parent corporation.  Johnson, 724 F.3d at 352.

Under the facts presented, the nerve center of Avco and thus Lycoming is in Providence, Rhode Island.  As the Supreme Court cautioned in Hertz, the fact that it may appear to the public that the business of Avco or Lycoming is centered in Pennsylvania is not controlling.  The nerve center test, the Court acknowledged, sometimes produces a counterintuitive result. Hertz, 559 U.S. 77 at 96.  If the defendant in Johnson was found to be a citizen of Delaware on a much thinner record than exists here, then clearly Avco has met its burden of proving that it is a citizen of Rhode Island.  The record is replete with evidence that Lord, the president and CEO of Avco, who is located in Rhode Island, directed and controlled Avco's operations and finances even while she delegated some authority to other officers of the company.

-15-

Plaintiff argues that removal is improper because Avco's officers, who are also officers of affiliated companies such as Textron, often made decisions for Avco or Lycoming using titles or stationery of companies other than Avco.  Indeed, Willaman, the assistant secretary of Avco, takes on multiple roles within the affiliated companies that include Textron, Inc., TSC, Avco, and Lycoming.  However, plaintiff does not dispute that Lord is the president and CEO of AVCO.  As already noted, Avco has provided sufficient evidence that Lord, in her position as head of Avco, directed and controlled the activities of that company.  Accordingly, her location is the location of the "nerve center."  Even assuming Lord or other officers sometimes disregarded corporate formalities, it is of no moment here, since those decisions were all made in Rhode Island and not in Pennsylvania.

In summary, Avco has proven that its nerve center, and thus its principal place of business, is in Providence, Rhode Island.  That is "where [the] corporation's officers direct, control, and coordinate the corporation's activities." Hertz, 559 U.S. at 92.  The office of Avco in Providence is clearly more than a "mail drop, a bare office with a computer or the location of an annual executive retreat."  Id. at 97.  Complete diversity of citizenship exists as no defendant is a citizen of the Commonwealth of Pennsylvania.  The required amount in controversy has been satisfied.  Removal of the action to this court was proper under 28 U.S.C. § 1441(a).

-16-

The motion of plaintiff to remand this action to the Court of Common Pleas of Philadelphia County will be denied.