IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIA ROBERTSON-ARMSTRONG | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROBINSON HELICOPTER COMPANY, | : | |
| INC., et al. | : | NO. 13-2810 |

MEMORANDUM

Bartle, J.                                              November 19, 2015

Plaintiff Julia Robertson-Armstrong ("Robertson-Armstrong") was severely injured on July 20, 2011 when a helicopter in which she was a passenger crashed in New Jersey. She has sued Robinson Helicopter Company, Inc. ("Robinson"), the manufacturer of the helicopter, as well as Nassau Helicopters, Inc. ("Nassau"), which owned and operated it at the time of the crash.[1] Her complaint includes claims for strict liability, negligence, negligent misrepresentation and omission, and fraud against Robinson and a negligence claim

---

1. Roberston-Armstrong also sued three related business entities: Textron, Inc. ("Textron"); AVCO Corporation ("AVCO"); and Lycoming, a/k/a Lycoming Engines, a/k/a Lycoming Engines Operating Division of AVCO Corporation, a/k/a Textron Lycoming Reciprocating Engine Division ("Lycoming"). She alleged that Lycoming had manufactured the engine of the subject helicopter and its "fuel related components," that Lycoming was a division of AVCO, and that Textron was liable for AVCO's acts under a participation theory. On April 23, 2014 the court dismissed Robertson-Armstrong's claims against Lycoming and Textron. The parties subsequently stipulated to the dismissal of Robertson-Armstrong's claims against AVCO and Nassau's crossclaims against AVCO and Textron.

against Nassau. Robinson and Nassau subsequently filed crossclaims against one another, each asserting that the other is liable for the harm alleged.

Robinson has filed a number of pretrial motions challenging Robertson-Armstrong's experts under <u>Daubert v. Merrel Dow Pharmaceuticals</u>, 509 U.S. 579 (1993), and Rule 702 of the Federal Rules of Evidence. We will now consider the motion of Robinson to preclude Robertson-Armstrong's expert Rodney L. Doss ("Doss") from testifying at trial.

I.

The court has a "gatekeeping" function in connection with expert testimony. <u>See</u> <u>Gen. Elec. Co., et al. v. Joiner</u>, 522 U.S. 136, 142 (1997); <u>see also</u> <u>Daubert</u>, 509 U.S. at 589. Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As our Court of Appeals has repeatedly noted, Rule 702 embodies three requirements: qualification,

reliability, and fit. Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008).

An expert is qualified if he "possess[es] specialized expertise." Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). This does not necessarily require formal credentials, as "a broad range of knowledge, skills, and training qualify an expert," and may include informal qualifications such as real-world experience. In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994). The qualification standard is a liberal one, and an expert may be sufficiently qualified under Rule 702 even if "the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996).

To determine reliability, we focus not on the expert's conclusion but on whether that conclusion is "based on the methods and procedures of science rather than on subjective belief or unsupported speculation." Schneider, 320 F.3d at 404 (internal quotation marks omitted). Our analysis may include such factors as:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the

>technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Pineda, 520 F.3d at 247-48.

"[T]he test of reliability is flexible" and this court possesses a broad latitude in determining reliability. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141-42 (1999). To be reliable under Daubert, a party need not prove that his or her expert's opinion is "correct." Paoli, 35 F.3d at 744. Instead:

>As long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process –competing expert testimony and active cross-examination – rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.

United States v. Mitchell, 365 F.3d 215, 244 (3d Cir. 2004) (quoting Ruiz-Troche v. Pepsi Cola Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)).

As for "fit," expert testimony must also "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Thus, to "fit," such evidence must bear some relation to the "particular disputed factual issues in the case." United States v. Downing, 753 F.2d 1224, 1237 (3d Cir. 1985). Accordingly, this factor has been

described as one of relevance.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 591 (1993); Paoli, 35 F.3d at 745 & n.13.

## II.

Doss was retained by Robertson-Armstrong to review certification data related to the Robinson R22 helicopter and to determine whether Robinson, as the holder of the "type certificate" for that model, "properly satisfied its [Federal Aviation Administration] regulatory requirements for certification during production."  Robertson-Armstrong intends to introduce his testimony on topics which include the process by which Robinson obtained certification from the Federal Aviation Administration ("FAA") for the Robinson R22 helicopter involved in the subject accident and the presence of design defects in that aircraft model.

The Curriculum Vitae of Doss reveals his extensive background in aircraft certification and design.  From 1990 until 1996, he was employed by the FAA, where he held the title of Aviation Safety Inspector.  In this role, Doss was involved in the inspection and certification of numerous aircraft and also played a role in accident investigations.  In addition, he received regulatory training.  After leaving the FAA, Doss spent a number of years in managerial roles at aviation safety and certification consulting businesses, several of which he founded or co-founded.  According to his resume, his responsibilities in connection with this work have included "assist[ing] with certification efforts"

-5-

related to various aviation regulations and serving as a FAA "Designated Airworthiness Representative." Doss is certified by the FAA as a pilot and as an Airframe and Powerplant Mechanic with an inspection authorization. Overall, Doss has worked as an aviation safety professional for approximately 42 years.

Doss provided Robertson-Armstrong's counsel with an expert report dated September 30, 2015. In it, he details Robinson's obligations as the holder of the FAA-issued "type certificate" for the R22 helicopter model. He also discusses investigations conducted by the National Transportation Safety Board ("NTSB") pertaining to Robinson-manufactured aircraft generally and to the R22 model helicopter in particular. His report describes his own review of the R22 helicopter and the subject crash and explains that this review involved inspection of NTSB reports and recommendations, depositions and deposition exhibits, and the reports of other experts retained in this matter, among other materials. Doss concludes that the R22 helicopter is "unreasonably dangerous," noting that the FAA standards governing its manufacture are merely "minimum standards." He also opines that the design of the R22 helicopter fails to "meet the intent of the certification regulatory requirements" and posits that it runs afoul of FAA regulation 14 CFR 27.141 in that it cannot be operated "without exceptional piloting skill, alertness, or strength."

III.

According to Robinson, Doss should not be permitted to testify as an expert at trial.  Robinson contends that Doss is not qualified to opine on issues of design or regulatory compliance as they relate to the Robinson R22 helicopter.  In addition, Robinson argues that the opinions of Doss about FAA certification of the subject helicopter are "inherently unreliable."[2]

As to the qualifications of Doss to testify about FAA type design certification, Robinson urges that his "former position with and certification by the FAA did not provide him with the specialized knowledge" to offer his opinions.  We disagree.  Having reviewed his Curriculum Vitae, affidavit, and expert report, we are persuaded that he "possess[es] specialized expertise" in the area of aircraft certification and design.  See Schneider, 320 F.3d at 404.  Specifically, Doss has had ample opportunity to become familiar with the process through which aircraft are certified by the FAA, and he is clearly well-versed in the agency's regulatory requirements.  Moreover, as a FAA certification professional, Doss would necessarily have had to be familiar with the elements of safe aircraft design.  He is clearly qualified to opine on helicopter design safety and on issues of regulatory compliance.

---

2.  Robinson does not appear to challenge the "fit" of Doss' testimony to the facts of this particular case.  See Pineda, 520 F.3d at 244.

Robinson advances an additional challenge the expertise of Doss by contrasting his qualifications with those of its own regulatory compliance expert, Ronald Wojnar ("Wojnar").  It appears to be Robinson's position that Wojnar's experience dwarfs Doss' expertise, demonstrating that Doss is not qualified to testify.  This argument is misplaced.  As noted above, we may deem an expert qualified under Rule 702 even if we do not find him "to be the best qualified" and even if he lacks "the specialization that the court considers most appropriate."  Holbrook, 80 F.3d at 782.  The fact that Robinson believes its own expert to be more qualified than Doss does not persuade us to preclude Doss' testimony.  Whether one is a more highly qualified expert than the other is for the jury to decide.

Turning to the reliability of the opinions of Doss, Robinson objects to his use of certain FAA-issued documents in formulating those opinions, contending that those documents are not relevant.  In response, Robertson-Armstrong explains that the report of Doss contains a typographical error with respect to one of those documents.  The document on which Doss actually intended to rely, FAA Order 8000.373, sets forth the FAA's "Compliance Philosophy" and is clearly relevant to this matter. Robertson-Armstrong further explains that the other document to which Robinson objects, FAA Order 8110.4c, which was issued after the R22 helicopter was certified, essentially replaced a

pre-certification document, FAA Order 8110, without modifying the content of that document in any material way.  Robinson-Armstrong's assertions appear accurately to characterize the FAA orders at issue.  As a result, insofar as Robinson's motion is based on the purported irrelevance of those materials, it will be denied.

Robinson also argues that Doss should be barred from testifying that the company failed to comply with FAA regulations in producing the R22 helicopter because this conclusion is contrary to the determination reached by the FAA in issuing a "type certificate" for that particular model.[3]  Robinson further contends that one of his conclusions about its compliance stems from "an incorrect reading and application of" the applicable regulation.  It appears to be Robinson's position that determinations about compliance with FAA certification requirements are for the FAA – and the FAA alone – to make.  However, this contention is belied by Robinson's reliance on its own regulatory compliance expert, Wojnar, who opines in his report that Robinson's manufacture of the R22 helicopter did in fact satisfy the FAA's requirements for type certification.  Robinson cannot plausibly argue that regulatory compliance is beyond the purview of an expert who is not employed by the FAA while simultaneously relying on just such an expert to offer his opinions on precisely that topic.  Further, in response

---

3.  It is not clear whether Robinson considers this argument to be a challenge to Doss' qualifications, to the reliability of his methods, or to both.

to Robinson's position that the opinions of Doss about its noncompliance with the applicable regulations are "factually untrue," this is clearly an issue for the trier of fact.

In sum, Doss is qualified to testify as an expert on Robinson's compliance with FAA requirements and on purported defects in the design of the R22 helicopter.  His opinions on these subjects are reliable.  The motion of Robinson to preclude his testimony will therefore be denied.